3:24-mj-00036

DISTRICT OF OREGON, ss:     AFFIDAVIT OF RYAN R. DONOVAN

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Ryan R. Donovan, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am Special Agent Ryan R. Donovan with the Federal Bureau of Investigation ("FBI") and have been since August 2021, prior to joining the FBI, I served as police officer in Prince William County, Virginia, seven years.  During that time, I was assigned as a patrol officer working 9 PM – 7AM, SWAT, and was a school resource officer.  My current assignment is to the Transnational Organized Crime and Violent Gangs squad.  Since becoming a law enforcement officer, I have received training and/or professional experience in basic narcotic investigations, familiarization with U.S. narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, informant development, Title III investigations, and undercover operations.  During the course of my law enforcement career, I have been involved in investigations of numerous federal and state criminal offenses.  I have participated in numerous investigations of illicit drug trafficking organizations, ranging from street level dealers to major dealers.  These investigations have included the use of confidential sources (CSs), and sources of information (collectively "Sources"); toll records; physical surveillances; and the execution of search warrants.  These investigations have also included possession with intent to distribute, and distribution of controlled substances.  These investigations have resulted in numerous state and/or federal prosecutions of individuals who have possessed, and or distributed controlled

substances, as well as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

2.   I submit this affidavit in support of a criminal complaint and arrest warrant for **Maximiliano Estrada-Burgo** (herein after referred to as **Estrada-Burgos**) for possession with intent to distribute a controlled substance (cocaine), in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c).

3.   This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.   Pursuant to 21 U.S.C. § 841 (a)(1), it is unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute a controlled substance. Pursuant to 18 U.S.C. § 924(c) it is unlawful to possess a firearm in furtherance of a drug trafficking crime. Cocaine is a Schedule II controlled substance.

///

///

**Statement of Probable Cause**

5. This affidavit is based on a joint investigation conducted by the Federal Bureau of Investigations (FBI), Westside Interagency Narcotics Team (WIN), as well as other federal and state law enforcement, hereinafter referred to collectively as "Investigators."

6. On February 26, 2024, Investigators from WIN executed a series of federal search warrants on **Estrada-Burgos**, his Chrysler 300 with Oregon license plate 572-PNN, and his residence located at 2753 NE Overlook Dr, building 20, apartment 2036, Hillsboro, Oregon (herein after residence). The warrants were authorized by U.S. Magistrate Judge Jeffery Armstead on February 23, 2024.

7. Within the kitchen of Estrada-Burgos' residence, inside a cabinet, Investigators found one large plastic bag containing a chalky white powdery substance, as well as multiple smaller plastic baggies that also contained a white powdery substance, with a total weight combined weighed of approximately 234.7 grams. Investigators field tested a sample of the white powdery substance with a TRUNARC detection kit which returned a positive result for cocaine, a Schedule II controlled substance. The cocaine is depicted below:

///

///

///



8. Also located in the same kitchen cabinet, along with the cocaine, was a Ziplock baggie of Baking Soda, which I know is frequently used as a cutting agent that is mixed with cocaine to increase the amount of cocaine for sale, but which has the effect of diluting the concentration of cocaine within the mixture sold. Also located in the same kitchen cabinet were two digital scales which appeared to have cocaine residue on them. I know that scales are regular used by drug traffickers to weigh their drugs for sale. Investigators also found, inside the same kitchen cabinet, an orange bowl containing a white residue, which also field tested positive for cocaine. Within the same kitchen cabinet Investigators also found a glass container, spoon, and a plastic cup all containing what appeared to be cocaine residue. Located on a shelf near the kitchen was a MCK Pistol Conversion kit with a 31 round 9 mm magazine. On the counter under the cabinet containing the cocaine investigators found a vacuum sealer and another digital scale.

9. Inside the hallway closet of the residence Investigators found approximately 56 pounds of marijuana.

10. Located within a bedroom closet of the residence Investigators found a Smith and Wesson M&P 15 AR-15 Rifle, serial number TU49032; a Mossberg 590 12 Gauge pump shotgun, serial number V1405022; a shoebox containing **Estrada-Burgos'** passport; a Glock 9mm barrel, which we could tell from its condition had been fired; and, both 9 mm and 5.56 x 45 mm ammunition. Inside the closet Investigators also found a black tactical vest with ballistic plates inserted. The firearms and vest are depicted below:



(Smith and Wesson M&P 15 AR-15 Rifle)

///

///

///



(Mossberg 590 12 Gauge pump shotgun)



(Black tactical vest with ballistic plates)

///

///

AFFIDAVIT OF RYAN ROBERT DONOVAN                                                                 Page 6

11. Located within the same bedroom, inside a basket, Investigators found a 9 mm Glock 19, serial number BPXF442. This handgun was equipped with a laser attachment and an aftermarket threaded barrel, depicted below.



(9 mm Glock 19)

12. Throughout the house Investigators located numerous rounds of 9 mm, 5.56 x 45 mm, 12 gauge shotgun shells, and 5.7 x 28 mm ammunition.

13. Inside **Estrada-Burgos'** Chrysler, in the center console, Investigators found two small baggies of a chalky white powdery substance, weighing approximately 9.3 grams, that appeared to be cocaine. Investigators field tested a sample which returned a positive alert for cocaine. A single 9 mm handgun round was found on passenger floorboard of the vehicle.

14. **Estrada-Burgos** was arrested and advised of his constitutional *Miranda* rights. **Estrada-Burgos** agreed to talk with Investigators and stated the cocaine located inside the Chrysler was his, but when asked about the larger amount of cocaine found in his kitchen he denied that it was his and began to change the topic of conversation. During the interview

**Estrada-Burgos** provided consent for Investigators to search his phone. During the review of his phone Investigators located multiple Instagram messages between **Estrada-Burgos** and other people, who appeared to be his customers, discussing his sale of cocaine and marijuana to them. In one message a customer was asking if **Estrada-Burgos** could do a "zip" for a "band," which he agreed to. **Estrada-Burgos** admitted that he had been purchasing cocaine from a distributor for approximately the last six months. I know from my training and experience as well as speaking with senior narcotics investigators that a "zip" is a reference to an ounce and a "band" is a reference to $1,000, which in this context I know is a reference to the purchase of one ounce of cocaine for $1,000. When he was asked about the firearms **Estrada-Burgos** stated the shotgun was a friend's and that he enjoyed shooting. **Estrada-Burgos** stated he lived with his girlfriend Maria Gutierrez-Blancas and a roommate named "Mathew." **Estrada-Burgos** stated "Mathew" had left the apartment 5 to 7 days ago and he has not heard or seen him since. Investigators located a locked safe in what **Estrada-Burgos said was** "Mathew's" room which contained a small variety of pills which mainly consisted of oxycodone.

15.     I am very familiar with how cocaine dealers operate and I know that cocaine dealers regularly buy larger amounts of cocaine and then break it down into smaller amounts for purposes of distribution. I know that cocaine dealers regular buy cocaine in bulk and then use bowls and blenders to mix in various additives which has the effect of increasing the amount of a mixture and substance containing cocaine available for sale, but which also has the effect of decreasing the purity of the mixture. I also know that drug dealers regular use scales to measure out the amounts of drugs for sale, since various weights of drugs sell for different prices. I know that cocaine in powder form is typically a white to off-white in appearance. I know a typical

user of cocaine will buy it in grams levels and use it by either inhaling or burning it in a smoking device (a "pipe") and inhale the smoke. I know an ounce (28 grams) of cocaine is more than what is considered personal use and is indicative of further distribution. I also know that a person possessing approximately 244 grams of cocaine does not possess it for personal use but rather such a quantity clearly indicates that it is possessed for purposes of further distribution.

16. I also know from my training and experience that drug traffickers regularly possess firearms as "tools of the trade." Drug dealers possess firearms in furtherance of their drug trafficking activities for a variety of reasons, to include: first, having an accessible gun provides defense against anyone who may attempt to rob the trafficker of their drugs or drug profits; second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted; third, having a gun accessible during a transaction provides protection in case a drug deal turns sour; fourth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place; and, fifth, having a gun may allow the drug trafficker to defend the "turf" area, including their residences or "stash houses," from which dealers operate.

**Conclusion**

17. Based on the foregoing, I have probable cause to believe, and I do believe, that **Maximiliano Estrada-Burgos** has committed the crimes of possession with intent to distribute a controlled substance (cocaine), in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c), and possession of a firearm in furtherance of drug trafficking crime, in violation of 18 U.S.C . § 924(c).

///

18. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Ryan R. Donovan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __8:00__ a.m./p.m. on February __27__, 2024.

_____
HONORABLE JEFFREY ARMISTEAD
UNITED STATES MAGISTRATE JUDGE